UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TYSON GRAY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | Case No. 12-CV-2016 |
| MIKE ATCHISON, Warden, ) | |
| ) | |
| Respondent. ) | |

**OPINION**

On January 18, 2012, Petitioner, Tyson Gray, submitted a petition for a Writ of Habeas Corpus by a Person in State Custody (#1) to the United States District Court for the Northern District of Illinois under 28 U.S.C. § 2254. Petitioner also filed a Motion for Leave to Proceed in Forma Pauperis (#3). On January 18, 2012, Petitioner paid the $5 filing fee (#4), and on January 23, 2012, the case was transferred to this court from the Northern District of Illinois. On February 9, 2012, this court entered a text order dismissing the Motion for Leave to Proceed in Forma Pauperis (#3) as moot. On February 22, 2012, Petitioner filed a Motion to Appoint Counsel (#9). On March 15, 2012, Respondent filed a Motion to Dismiss (#12) with attached exhibits. On March 23, 2012, Petitioner filed a Response (#14).

This court has carefully reviewed both parties' arguments and the exhibits filed in this case. Following this careful and thorough review, this court agrees with the Respondent that the Petitioner's § 2254 petition is time-barred. Therefore, Respondent's Motion to Dismiss (#12) is

GRANTED, and Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DISMISSED.

## FACTS

### I. Pre-Trial Proceedings

On April 16, 2004, William Derrosset died of a stab wound to the neck. The Registered Nurse on duty at the emergency room to which Derrosset was taken stated that it was an apparent suicide. Deputy Coroner Steven Skinner and Lieutenant Mike Metzler of the Urbana Police Department ordered an autopsy because (1) Derrosset's neck wound was not consistent with a typical self-inflicted injury; (2) there had been a shooting death in Derrosset's neighborhood the previous month; and (3) Derrosset's door had been forced open, although it was not clear if it had been forced open from the inside or from the outside. Dr. Bryan Mitchell conducted an autopsy on April 17, 2004, and he believed that the wounds were self-inflicted because of hesitation marks on the arms and old scars that indicated that Derrosset may have tried to commit suicide in the past. Furthermore, Dr. Mitchell concluded that the angle of the wound to the neck was such that Derrosset *could* have inflicted it himself.

Urbana police investigators had observed Petitioner, who lived across the street from Derrosset, near the crime scene on the night of the Derrosset's death. Petitioner's uncle told the police that Petitioner had come home that night with a cut on his hand. Other witnesses reported that they had seen Petitioner around this time covered in blood, and four different people told police that Petitioner had told them that he had stabbed a man and taken his money. While Petitioner was in the Champaign County Jail, another source recorded several statements made by Petitioner about stabbing an old man. DNA tests were performed on blood found on the back

of Petitioner's pants, revealing that it was Derrosset's blood.  Petitioner's blood was not found on Derrosset's person.

An inquest into the manner of Derrosset's death was held on November 18, 2004.  At the inquest, Lieutenant Metzler testified that the police department did *not* believe that the wounds were self-inflicted.  However, because the investigation was still ongoing and because no one had been charged yet, he explained that he could not reveal any more information.  After the inquest was held, the coroner's jury ruled Derrosset's death a homicide.

On November 1, 2006, Petitioner was charged with the murder of Derrosset and on January 26, 2006, Petitioner was indicted.  A public defender was appointed for the Petitioner on February 2, 2006.  On July 5, 2006, Petitioner pleaded guilty to one count of first degree murder and one count of residential burglary, for which he was sentenced to 30 years imprisonment, with 167 days of credit given for time served.  Petitioner did not file any post-plea motion to withdraw his guilty plea, and he did not file a direct appeal.

## II. Post-conviction proceedings

On December 26, 2007, Petitioner filed a *pro se* post-conviction petition with the Circuit Court of the Sixth Judicial Circuit of Champaign, Illinois.  Petitioner claimed that he had received ineffective assistance of counsel because his attorney advised and pressured him to plead guilty to the murder of Derrosset even though the deputy coroner had ruled the death a suicide, and because his attorney failed to develop a defense for Petitioner.  Petitioner also claimed that there were expert witnesses that could have testified that Derrosset's death was a suicide, including the Registered Nurse on duty in the emergency room the night that Derrosset was brought in, Dr. Mitchell and Deputy Coroner Steven Skinner.  The Circuit Court dismissed

the petition and Petitioner's appeal of the dismissal was unsuccessful.[1] On December 23, 2011, Petitioner submitted a petition for a Writ of Habeas Corpus by a Person in State Custody to this court under 28 U.S.C. § 2254.

## ANALYSIS

Petitioner raises four claims in his § 2254 petition: (1) ineffective assistance of pre-trial counsel; (2) conflict of interest which violates attorney-client privilege; (3) a Due Process Clause violation under the 5th and 14th Amendments; and (4) Actual Innocence of Derrosset's death. However, Petitioner's federal habeas petition is untimely because it was filed more than four years after the applicable statute of limitations expired.

A § 2254 petition has a one-year statute of limitations. According to 28 U.S.C. § 2244(d):

> (1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims

---

[1] The proceedings in Petitioner's post-conviction appeal concluded on January 26, 2011, when the Illinois Supreme Court denied Petitioner's petition for leave to appeal (PLA).

>    presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Under Ill. S. Ct. Rule 604(d), a defendant who pleads guilty must appeal the judgment within thirty days of the imposition of his sentence by filing a motion to reconsider the sentence or a motion to withdraw the plea and vacate the judgment. Petitioner did not pursue either course of action, and he did not directly appeal any element of his claim. Under § 2244(d)(1)(a), Petitioner's sentence became final on August 4, 2006, thirty days after the imposition of his sentence on June 5, 2006. Petitioner does not allege a state-created impediment (28 U.S.C. § 2254(d)(1)(B)), a newly asserted constitutional right (28 U.S.C. § 2254(d)(1)(C)), or the discovery of a factual predicate of his claim (28 U.S.C. § 2254(d)(1)(D)). Thus, the statute of limitations should be calculated according to § 22454(d)(1)(A). Accordingly, Petitioner had until August 4, 2007 to file his habeas petition, but he did not do so until more than four years after that date, rendering his petition untimely.

**I. Statutory Tolling**

Additionally, Petitioner is not entitled to statutory tolling under § 2244(d)(2). Petitioner filed a state post-conviction petition on December 18, 2007, four months after the limitations period for filing a § 2254 petition had expired. As a result, his post-conviction petition did not have any tolling effect because the limitations period had already expired. See e.g., Graham v. Borgen, 483 F.3d 475, 483 (7th Cir. 2007) (stating that an untimely post-conviction petition has no tolling effect for purposes of the AEDPA); Escamilla v. Jungwirth, 426 F.3d 868, 870 (7th

5

Cir. 2005) (stating that a "state court's willingness to entertain a belated collateral attack on the merits does not affect the timeliness of the federal proceeding").

## II. Equitable Tolling

Finally, Petitioner is also not entitled to equitable tolling of the statute of limitations. In order for the limitations period to be equitably tolled, a petitioner "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Petitioner asserts that he did not file a direct appeal in state court because he did not know that he had this option. However, even if this were an "extraordinary circumstance," which it is not,[2] he only asserts this defense with respect to his state petition, not his *federal* petition. Petitioner raises no extraordinary circumstance that prevented him from timely filing his federal habeas petition, and thus he is not entitled to equitable tolling on these grounds.

Petitioner's fourth claim is actual innocence in the death of Derrosset. Petitioner does not explicitly state in his petition that this should be a basis for equitable tolling, but even assuming that this was his intention,[3] Petitioner is still not entitled to equitable tolling. First, the Seventh Circuit has held that "'actual innocence' is unrelated to the statutory timeliness rules" and instead has found that it only "permits a second petition under § 2244(b)(2)(B)-it clears away a claim that the prisoner defaulted in state court or by omission from the first federal

---

[2] See Tucker v. Kingston, 538 F.3d 732, 735 (7th Cir. 2008) ("[T]he lack of legal expertise is not a basis for invoking equitable tolling."); Arrieta v. Battlaglia, 461 F.3d 861, 867 (7th Cir. 2006) ("Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of equitable tolling.").

[3] See Wilson v. Phend, 417 F.2d 1197, 1199 (7th Cir. 1969) ("[L]iberal construction is to be accorded material drawn pro se, including petitions for habeas corpus . . . .")

petition-but does not extend the time to seek collateral relief." Escamilla, 426 F.3d at 871. Thus, a claim of "[a]ctual innocence without a newly discovered claim does nothing at all." Id. at 872. Because Petitioner does not allege a newly discovered claim, his assertion of actual innocence has no tolling effect.

Finally, Petitioner does not assert any other circumstances that rise to the level of "extraordinary." The Seventh Circuit has "yet to identify a factual circumstance so extraordinary that it warrants equitable tolling." Johnson v. Chandler, 224 Fed. Appx. 515, 519 (7th Cir. 2007).[4] However, the Seventh Circuit has held that "[f]or equitable tolling to excuse an untimely filing, a prisoner must demonstrate that he could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." Lloyd v. Van Natta, 296 F.3d 630, 633 (7th Cir. 2002) (internal quotation omitted). Constructive knowledge of information is generally sufficient. See McCleskey v. Zant, 499 U.S. 467, 500 (1991). Petitioner does claim that the supplementary autopsy report was "fraudulently concealed" from him for two years, but he does not meet his burden of showing that this was an extraordinary circumstance that prevented him from filing earlier. First, Petitioner's claim that the documents were concealed for two years is inconsistent with Petitioner's December 23, 2007

---

[4] In Johnson, however, the Seventh Circuit identified a number of similar situations that do *not* merit tolling:
> "*See Modrowski,* 322 F.3d at 967 (holding that attorney incapacity does not warrant equitable tolling); *see also Lloyd v. VanNatta,* 296 F.3d 630, 633 (7th Cir.2002) (ruling that lack of access to trial transcripts does not warrant tolling); *Montenegro v. United States,* 248 F.3d 585, 594 (7th Cir.2001) (holding that an attorney's nonresponsiveness, prisoner's ignorance of the law and prison transfer do not warrant equitable tolling); *Marcello,* 212 F.3d at 1010 (ruling that tolling was not justified by opaque law and death of attorney's father); *Taliani v. Chrans,* 189 F.3d 597, 598 (7th Cir.1999) (holding that attorney's negligence does not warrant tolling)."

224 Fed. Appx. at 519.

post-conviction petition, in which he raised a claim based on these facts, one year and four months after he entered his plea of guilty. Second, it is possible, if not likely, that Petitioner knew that such information existed. Petitioner's Public Defender, Anthony Ortega, signed an affidavit in which he asserted: "I did not investigate the possibility of suicide or follow up on the reports of suicide based upon conversations with Mr. Gray." This statement makes it seem as though Petitioner was well-aware of the fact that it was possible that Derrosset had committed suicide, at which point he could have investigated the record more closely. See McCleskey, 499 U.S. at 500. Finally, although Petitioner alleges that the documents were "fraudulently concealed," he "cites no evidence whatsoever to substantiate these accusations" and thus "has failed to identify any extraordinary obstacle that prevented him from learning this information sooner." U.S. ex rel. Baker v. Ramos, 697 F.Supp. 2d 987, 993 (N.D. Ill. 2010). Consequently, these circumstances do not entitle Petitioner to equitable tolling of the statute of limitations.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final judgment adverse to a habeas petitioner. A petitioner may appeal a district court's denial of a writ of habeas corpus only when the petitioner has been issued a certificate of appealability. 28 U.S.C. § 2253(c)(1). To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Additionally, when a "district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right and that jurists of reason would not find the accuracy of the court's procedural ruling to be debatable.  Therefore, this court concludes that a certificate of appealability is unwarranted.

       IT IS THEREFORE ORDERED THAT:

       (1) Respondent's Motion to Dismiss (#12) is GRANTED.

       (2) Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#1) is DISMISSED.

       (3) A certificate of appealability is DENIED.

       (4) Petitioner's Motion to Appoint Counsel (#9) is DISMISSED as moot.

       (5) This case is terminated.

       ENTERED this 16th day of July, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE